NO. 07-06-0222-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 31, 2008

______________________________


IN THE MATTER OF THE MARRIAGE OF

NANCY J. KLEIN AND W. MIKE KLEIN

_________________________________

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2001-514,023; HONORABLE DRUE FARMER, JUDGE

_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


DISSENTING OPINION


Â Â Â Â Â Â Â Â Â Â Contrary to the position taken by the majority, I would sustain Mikeâs first issue,
reverse that portion of the Modified Order of Enforcement that awarded Nancy recovery
of $2,239.91, together with prejudgment interest, for sums paid for seasonal bedding plants
planted at the marital residence in June 2003, and render judgment that Nancy take
nothing by her claim as to that issue. 
Â Â Â Â Â Â Â Â Â Â As noted by the majority, the temporary orders gave Nancy exclusive possession
of the marital residence and obligated Mike to pay certain household expenses, including
ânormal weekly lawn maintenance.â Under the plain meaning concept of contract
construction, normal weekly lawn maintenance is not the same thing as specially planted
seasonal flowers. However, Nancy contends, and the majority agrees, that the obligation
to plant seasonal flowers was not an obligation âincurred solely by [her] . . . incurred [after]
May 27, 2001.â Nancy reasons that because the service was performed pursuant to a
âstanding orderâ it was incurred jointly, and was thus Mikeâs obligation. This argument,
however, ignores the fact that the work would not have been performed if she had not
scheduled the work and instructed the workers to complete the job. Nancy had exclusive
possession of the residence and was in control of any decision to incur an obligation not
expressly covered by the terms of the temporary order. Because I believe the obligation
was incurred solely by Nancy, and because I believe that it was not an obligation expressly
assumed by Mike (i.e. it was not weekly lawn maintenance), I would sustain Mikeâs first
issue, reverse the judgment of the trial court and render judgment that Nancy take nothing
by her claim as to that issue. In all other respects, I concur with the majority.
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice




.W.3d 643, 654 (Tex. Crim.
App. 2002) (in which the defendant day laborer testified he had lost money and suffered
as a result of the requirement to report weekly to the bonding company). So, on the
record before it, the trial court could have reasonably concluded that appellant failed to
demonstrate actual prejudice. 

 As can be seen, only the first two factors appear to weigh against the State, and one
of the two is not that weighty. On the other hand, the trial court had basis to conclude that
the keys to his speedy trial lay in the hands of appellant in large part, and, by withholding
complaint until the eve of trial, the balance of the factors strikes against him. Thus, we
overrule the issue since we cannot say that the decision rendered on the matter lacked
evidentiary support or failed to comport with the law. See Shaw v. State, supra (unjustified
38-month delay without objection by defendant until the eve of trial held not to have denied
him a speedy trial); Dragoo v. State, supra (a 3 ½-year unjustified delay without objection
until the eve of trial held not to have violated defendant's right to a speedy trial). 

 Issues 2 and 3 - New Mexico Conviction

 Appellant's other two issues concern a previous New Mexico conviction used to
enhance his punishment. The conviction arose in 1980 and involved criminal sexual
penetration. The State's use of it to enhance the punishment accompanying his current
conviction allegedly violated constitutional ex post facto prohibitions. Moreover, in denying
the jury opportunity to decide whether the New Mexico offense was substantially similar to
various statutory crimes mandating a life sentence, the trial purportedly erred. We overrule
each issue.

 One convicted of aggravated sexual assault must be imprisoned for life if he was
previously convicted of the same crime or others listed in Â§12.42(c)(2)(B) of the Texas
Penal Code. Tex. Pen. Code Ann. Â§12.42(c)(2) (Vernon Supp. 2006). Furthermore, the
prior conviction may be that issuing from another state so long as the elements of the
crime underlying that conviction are substantially similar to aggravated sexual assault or
the other various crimes itemized under Â§12.42(c)(2)(B). Id. Â§12.42(c)(2)(B)(v). Whether
they are substantially similar is a question of law involving the interpretation of the
respective statutes. See Hardy v. State, 187 S.W.3d 232, 236 (Tex. App.-Texarkana
2006, pet. ref'd) (wherein the court compared the two statutes to determine their similarity
after noting that the interpretation of a statute was a question of law); accord, Ex parte
White, 211 S.W.3d 316, 318 (Tex. Crim. App. 2007) (wherein the Court of Criminal
Appeals determined whether the two statutes were substantially similar). And, being a
question of law, the matter need not be submitted to a jury for resolution. Id. Thus, the
trial court at bar did not err in deciding the matter itself as opposed to allowing the jury to
do it. (1)

 As for the dispute about whether use of the New Mexico conviction transgressed ex
post facto prohibitions, we conclude that it did not and does not. This is so due to the
wording of the New Mexico statute upon which appellant relies. According to the proviso,
completing probation means that the accused satisfied his criminal liability and authorizes
him to apply for a pardon from the governor to regain his full rights of citizenship. N.M.
Stat. Ann. Â§31-20-8 (1978). Yet, nowhere does it state that the conviction cannot be later
used for enhancement purposes. And, that fact distinguishes the circumstances before
us from those in Scott v. State, 55 S.W.3d 593 (Tex. Crim. App. 2001). The latter dealt
with the extent one's deferred adjudication could be used to enhance the punishment
applicable to a crime he later committed. When Scott was placed on deferred adjudication,
statute dictated that the completion of his probation did not result in a conviction
susceptible to use for enhancement purposes; so, a change in the law that later allowed
its use implicated ex post facto considerations according to the Court of Criminal Appeals. 
Id. at 597-98. But, when no such express limitation appears in the statute, ex post facto
considerations are not implicated. Ex parte White, 211 S.W.3d at 320. There being no
such limitations in the New Mexico statute cited by appellant, ex post facto restrictions were
not violated when appellant's New Mexico conviction was used for enhancement purposes
here.

 Having overruled each issue, we affirm the trial court's judgment


 Brian Quinn

 Chief Justice 


Publish.
1. Appellant does not suggest that the New Mexico statute underlying his prior conviction was dissimilar
to the crimes itemized in Â§12.42(c)(2)(B). So we do not address the similarity between the elements of the
various crimes.